NATHANIEL A. COWDREY, Respondent, *v.* WILLIAM A. COIT, Appellant.

Although the grantee, in a deed containing covenants of warranty and for quiet enjoyment, becomes himself the purchaser on the foreclosure of a prior mortgage, and then sells his bid to a third person and surrenders possession upon such third person receiving a deed from the officer making the sale, such foreclosure sale is an eviction.

If such deed is the sole consideration of a bond given by the grantee therein, the eviction is a complete defence to any recovery upon the bond.

An assignee of the bond, with notice, is in no better position than the original obligee.

Questions calling for the undisclosed intention or object of a party are immaterial and properly excluded.

(Argued January 10, decided May 1, 1871.)

APPEAL from an order of the General Term of the New York Superior Court, reversing a judgment in favor of the defendant and granting a new trial.

This action was brought in the Superior Court of the city of New York, by the plaintiff, on or about the 15th day of May, 1862, to recover a balance of $1,333.50, and interest thereon from the 5th day of June, 1861, claimed to be due to him on a bond for $2,000, given by the defendant, Coit, to Edward H. Hawke, bearing date on the 28th day of February, 1859, and which had, through and by sundry assignments, been transferred to the plaintiff. The defendant set up a failure of consideration as a defence, and also claimed a set-off or counterclaim for damages sustained by him in consequence thereof.

The issues were tried by Justice McCUNN without a jury.

He made and filed a decision in favor of the defendant. Judgment was entered thereon, which, on appeal, was reversed by the General Term of that court, and a new trial was ordered, with costs to the plaintiff, to abide the event. From that order the defendant has appealed to this court, giving a stipulation, that if it is affirmed, judgment absolute shall be rendered against him. The facts sufficiently appear in the opinion of the court.

The case below is reported, 3 Robertson, 210.

*Samuel Hand,* for the appellant, that the plaintiff held the bond subject to the equities in favor of the defendant, cited *Bush* v. *Lathrop* (22 N. Y., 535). That there was an eviction, he cited *St. John* v. *Palmer* (5 Hill, 599); *Hunt* v. *Amidon* (4 Hill, 345); *Simers* v. *Saltus* (3 Den., 214); *Greenvault* v. *Davis* (4 Hill, 643); *Leach* v. *Bailey* (Ct. of App'ls, 1857), cited *Curtis* v. *Bush* (39 Barb., 664).

*F. N. Bangs,* for the respondent.

LOTT, Ch. C. The bond, on which the plaintiff sought a recovery, was given for a portion of the purchase money of real estate in the city of Brooklyn, sold and conveyed to the defendant in fee, free from all incumbrances, by Edward H. Hawke, the obligee, and was secured by a mortgage thereon. The deed contained a covenant of warranty and all the usual full covenants. There was, in fact, at the time of such sale and conveyance, a subsisting mortgage for $5,000 on the land and some adjoining property, and in the deed thereof to Hawke, there was a clause, declaring that the premises were subject to the said mortgage, that the said sum formed a part of the consideration for the conveyance, and that the payment thereof, with interest, from 20th September, 1858, was assumed by the said Hawke. That mortgage was subsequently foreclosed in the Supreme Court. The notice of the pendency of the action therefor, was filed in the office of the clerk of Kings county. John H. Poillon was then the

holder and owner of the bond in question and the mortgage accompanying it, and he, with the defendant and Hawke, the said obligee, and other persons, were made parties, as defendants. The plaintiff, in August following, while the said action was in progress, purchased and took an assignment of the said bond and mortgage, and he, during the negotiation for its purchase, by a note in writing, asked the defendant whether the mortgage was a correct and proper mortgage, and whether he had any defense legal or equitable thereto, to which the defendant, on the day next after its receipt, sent a written answer, in which, after stating that the mortgage was given for two thousand dollars as part purchase money for the premises mortgaged thereby, said it "*will be good* when Mr. Hawke pays off the prior encumbrance thereon and now still outstanding on the property and also covering the adjoining property, *and not good* until that is done ; for further information in relation thereto, you had better inquire of Messrs. Bonney, Titus & Roe, attorneys at law, 38 Wall street, as Mr. Roe holds the prior mortgage that has to be paid before my mortgage is worth a dollar. I hope for my own sake, and any others that may be interested, that the trouble may be soon removed and all be right." Judgment was subsequently, and on the sixteenth day of February, 1861, rendered in the said foreclosure suit, directing a sale of the whole of the mortgaged premises covered by the mortgage foreclosed, to satisfy the amount due thereon, and they were afterward sold by the sheriff of Kings county. The plaintiff and defendant, in the present action, both attended the sale and bid for the property, and it was struck off for the sum of $7,275, to the defendant, and he, for the consideration of $150 or $250, assigned his bid to John J. Hardy, to whom the sheriff by deed, dated March 14, 1861, conveyed the premises so sold ; and Hardy, under the deed, took possession of the property conveyed (including the premises for which the bond in question was given), and had ever since, up to the time of the trial of this action, continued in the possession thereof. The proceeds arising from the sale

were more than was required to make the payments directed
to be paid by the judgment, and the surplus, amounting to
the sum of $773.53, was after a reference to ascertain who
was entitled thereto, and an order confirming the referee's
report in favor of the plaintiff herein, paid to him on the
fifth day of June, 1861.

The defendant, at the time of the sale and conveyance of
the premises by Hawke to him, as above stated, was informed
of the said subsisting mortgage thereon, but Hawke agreed
" to take care " of it. He then held a bond and mortgage
from one Edward N. Rice for $12,000, which he proposed to
sell, and out of the proceeds to discharge the said mortgage,
and he placed them in the hands of the defendant to be sold
by him. The defendant, after trying for several months to
negotiate a sale thereof, and being unable to obtain such offer
therefor as Hawke was willing to accept, returned the said
bond and mortgage to Hawke, who, in June or July, 1859,
gave them up to said Rice.

All of these facts are found by the justice who tried the
issues, and he thereupon decided, as matter of law, that by
said suit for foreclosure of the said prior mortgage, the judg-
ment therein and the proceedings upon and under such
judgment, Coit, the defendant in this action, was evicted
from and lost the premises so conveyed to him, and that the
said conveyance was the only consideration for the bond, for
the recovery of which this action was brought.

Although the judgment rendered on that decision was
reversed by the General Term, the Code provides, by section
268, that " it shall not be deemed to have been reversed on
questions of fact, unless so stated in the judgment of rever-
sal." No such statement is made or contained in that judg-
ment. The facts above detailed are, therefore, now not open
for review, and must be assumed to be correctly found.

Upon that assumption the defendant was entitled to judg-
ment. The judgment in the action of foreclosure, and the
sale and subsequent proceedings under it, are conclusive on
both the plaintiff and defendant in this action. The assignor

of the bond and mortgage to him (John H. Poillon) was a party to that action, and the plaintiff took the assignment thereof during its pendency. He was therefore chargeable with notice thereof, and he has, subsequently, by the receipt of the surplus moneys arising from the proceeds of the sale, recognized the validity of the judgment. If Hardy, to whom the sheriff's deed was delivered, and who, under and by virtue thereof, took possession of the premises conveyed thereby, had himself been the original purchaser at that sale, a defence to the bond in suit for the balance unpaid would have been established. The surrender of the property by the defendant, under and in pursuance of the judgment directing the delivery of possession, was an eviction. A forcible dispossession or an actual physical expulsion was not necessary to constitute it. (See *Dyett* v. *Pendleton*, 8 Cow. Rep., 727, etc.) Such an eviction showed a failure of the consideration for which the bond was given.

The fact that the defendant himself became the purchaser at the sale does not alter the case, or change his position, or in any way prejudice or affect his rights. It must be assumed that the judgment of foreclosure and sale was in the usual form, and that he and any of the parties to it were authorized and permitted to bid and become a purchaser at the sale. There was, therefore, no impropriety in the act itself. Nor did it prejudice the plaintiff: on the contrary, its effect was to increase the surplus to which he was entitled. It was, consequently, an actual benefit to him. The judgment and the delivery of a deed under the sale made in pursuance thereof, whether made to a stranger or to the defendant himself, barred and forever foreclosed them from the right of redemption, and all interest, claim and demand to the property under the deed from Hawke to him. When he made the assignment of his bid, his title under that deed had, in fact, for all practical purposes, been extinguished, and the assignee became entitled to a superior and paramount title, and not merely to that which the defendant had acquired under and by virtue of the conveyance from Hawke. If, however, it be conceded that

there was not technically a *legal* eviction, it is clear that the facts on which the learned justice decided this case constituted a perfect defence to the defendant, under the decision by the Court for the Correction of Errors in *Hunt* v. *Amidon* (4 Hill, 345), and within the principle on which it was made.

In that case, the plaintiff Hunt, being in possession of a farm conveyed to him by a quitclaim deed from a grantor (one Babcock) who acquired his title thereto and to another piece of land for the consideration of $1,200 under a deed from Amidon the defendant, containing the usual covenant for *quiet enjoyment*, was made a party to a suit in the Court of Chancery for the foreclosure of a mortgage which was a lien on the property at the time the deed with the said covenant was given, and a decree of foreclosure and sale was subsequently rendered and entered therein. The farm was sold under the decree, and purchased by the plaintiff for the sum of $470. He then commenced an action of assumpsit for the recovery of that sum, with interest, from the defendant, as so much money paid for his use, and obtained a verdict, which, on a bill of exceptions, taken to the admissibility of evidence tending to show that the defendant promised the plaintiff's grantor, when he conveyed to him, to pay off the mortgage, and also to the charge of the judge on the trial, was set aside by the Supreme Court. BRONSON, J., in giving the opinion of the court, as reported in 1 Hill, 147, &c., said, among other things : " As there has been no eviction, there has been no breach of the covenant for quiet enjoyment in the defendant's deed to Babcock;" and then, after showing that the evidence given to prove the defendant's promise to pay off the mortgage was improperly admitted, concluded by saying that "the defendant is bound by *express* contract, the covenant for quiet enjoyment; and the plaintiff cannot recover on an *implied* promise." On a re-trial, the plaintiff offered in evidence proof of the facts proved on the first trial, and some additional facts; but it was excluded, and the plaintiff was thereupon nonsuited, and judgment was subsequently rendered by the Supreme Court for the defendant; whereupon

the plaintiff sued out a writ of error to the Court for the Correction of Errors, and the judgment was unanimously reversed. Chancellor WALWORTH and Senator ROOT delivered written opinions in favor of the reversal. The chancellor, in his opinion, after holding that the evidence offered on the second trial was properly excluded, and adverting to the facts, said the question was presented whether the plaintiff was bound to stand aside at the sale and suffer his land to be sold to a stranger, and then resort to an action at law upon the said covenant for quiet enjoyment, " or whether the decree of foreclosure and sale, which undoubtedly contained the usual directions, as provided for in the 135th rule of the Court of Chancery, that the purchaser should be let into possession upon the production of the master's deed, and the actual sale under that decree, were not of themselves equivalent, in equity at least, to an actual eviction of Hunt by an action at law, founded upon a title paramount to that which Amidon conveyed to Babcock, with warranty;" and then, after the discussion of the question, he came to the conclusion, without reference to the parol agreement that was alleged to have been made by the defendant to pay off the mortgage, that the decree of foreclosure and the sale under it were in equity an eviction, and that the money paid by the plaintiff to save his property from being sacrificed was a payment of money by the coercion of legal process for the use and benefit of the defendant Amidon, and that the plaintiff should have been permitted to recover it back, in the equitable action of assumpsit for money paid and expended for his use.

If the defendant in the present action, instead of making an assignment of his bid to Hardy, had himself taken the deed of the property, the facts would, under that decision, have been deemed an eviction in equity, and have given the same right as he would have had if there had been an actual eviction by a claim under a deed to a stranger. It follows, that it was immaterial, in reference to the question of eviction, whether the defendant himself, or Hardy took the sheriff's deed. In either case, the defendant was dispossessed under

a title paramount to his own, and there was a failure of the consideration for which the bond in suit was given, except as to the amount of the surplus money which was received by the plaintiff, as already stated. This eviction gave the defendant a right of action, on the covenants in his deed against Hawke, for the whole of the purchase-money except the said surplus, and would have constituted a defence to a suit on the bond by him for the balance. The plaintiff, as his assignee, stands in no different or better position. He took no greater or other rights than his assignor had, and his title was affected by the same equities and grounds of defence to which it was subject in the hands of Hawke, even if he had taken his assignment without notice of them. He, however, was fully apprised of the existence of the prior mortgage, and that the defendant claimed that the bond in question was "not good," nor "worth a dollar," until that incumbrance was paid off and discharged.

Justice ROBERTSON, in his opinion given on the reversal of the judgment by the General Term, relied principally on the ground, that the plaintiff's rights were different from what they would have been if he had not been the purchaser at the sheriff's sale, and that he thereby (to use his own language) "lost his right to recover back the whole purchase-money, if paid, or resist its recovery if unpaid, and elected to confine himself to a claim for money necessarily spent to make his title complete," and closed by saying, that "the preceding view rendered it necessary for the case to go back for a new trial, when the questions of any additional consideration having been given for the bond in suit beyond the conveyance of the land in question, and the right of the defendant to apply the sum paid by his vendee on the foreclosure, as damages for breach of the covenants in the deed to him, and the amount taken by the plaintiff out of court in satisfaction of any part of the claim of the plaintiff as a *bona fide* purchaser of such bond, may be disposed of."

I have already shown that the "view" expressed by him, rendering it necessary to have a new trial, was erroneous, and

I will now add, that the objects and purposes for which such new trial was deemed requisite had been disposed of by the decision. The facts bearing on the question of the consideration were found by him, and on these he came to the conclusion that the conveyance of Hawke to the defendant, " was the only consideration for the bond mentioned in the complaint in this action, and upon which the action was brought," and Hawke himself testified, that the only consideration for that bond, and the mortgage accompanying it, was the conveyance. If it be claimed that there was evidence tending to show that the bond and mortgage of Edward N. Rice, above mentioned, formed a part of such consideration, it is sufficient to say that the learned justice has found that it did not, and that they were placed by Hawke in the hands of the defendant, as his agent, for sale only. There was nothing in the findings of the justice to show, or tending to show, that the plaintiff could be benefited on a new trial by any evidence affecting the application of the purchase-money of the mortgaged premises. The judgment of foreclosure had directed the disposition thereof. There is no question, that so much as was required to satisfy the amount payable to the plaintiff in the judgment was so applied, and that the plaintiff in this action received the surplus. He certainly cannot complain of the payment of that surplus to him. Although the fact is not expressly stated, it is, I think, inferable from the findings of the justice, that the portion of the premises covered by the mortgage foreclosed, which was not included in the conveyance to the defendant, had been previously sold and conveyed to the said Edward N. Rice, and the case shows that such was the fact. The land of the defendant was, therefore, the primary fund for the payment of that mortgage, and the plaintiff, after receiving the surplus of the proceeds of the entire property, and thus in effect making the part not sold to him, instead of that which was, primarily liable, has no ground or reason to complain of the application of the purchase-money. If, in fact, there was anything to show that for any cause the defendant's land was charged for more than

was proper, it was incumbent on the plaintiff to show it, and his neglect, or failure to do it was no ground for a new trial. I do not see what question there was in the case affecting the rights of the plaintiff as a *bona fide* purchaser. It is clearly shown, that he took the bond in suit with full notice of the defendant's grounds of defence against its collection.

It is proper to notice the exceptions taken by the plaintiff to the admission and exclusion of evidence during the progress of the trial.

The first relates to proof admitted to show what the plaintiff paid for the bond in suit, and the mortgage accompanying it. Assuming that it was inadmissible, the evidence was wholly immaterial, and it did not prejudice the plaintiff. The second relates to the exclusion of the defendant's deposition taken before the trial, under section 391 of the Code. It was objected to and excluded on the ground that the defendant was in court and could be examined. That ground was untenable, but as the deposition was afterward admitted on the plaintiff's offer, " as admissions of material facts made by the defendant," he has had the full benefit of it, unless the exception now to be noticed is well taken.

The defendant, who, it must be borne in mind, was the plaintiff's witness, after stating the purpose for which the bond and mortgage of Edward N. Rice, before referred to, were left with him, was asked, " What, under your instructions from Mr. Hawke, or your agreement with him, would you have done with the proceeds if you had effected a sale ? " The question and answer thereto were excluded. There was no error in such exclusion. The question did not call for the admission of proof of a fact, but only for an undisclosed intention and object of the defendant. It was immaterial what he *would* have done. The only matters properly inquirable into were, what instructions were given by Hawke and what the agreement with him was ; and as to those, he had previously been asked, and his answers were admitted and read.

The answer is not contained in the case. We cannot assume

that it contained any statement irresponsive to the question, and if irresponsive only, the objection to the question applies equally to it. At all events, it does not appear to have contained any statement, the exclusion of which was prejudicial to the defendant.

There was, therefore, no sufficient ground for the reversal of the judgment, and the order of the General Term reversing it and granting a new trial was erroneous, and it must be reversed, with costs, and the judgment rendered at the trial term must be affirmed, with costs.

Gray, C. The consideration for which the bond in suit was given, was the premises described in the deed from Hawke to the defendants, and for the defendant's protection Hawke gave him in the deed three several covenants; one for quiet enjoyment of the premises ; one that the premises were unencumbered, and the other a warranty of title in the usual form. If Hawke, instead of giving the defendant a deed with the covenants and taking from him his bond, had given his covenant to convey to him a good title to the premises for a consideration to be paid by the defendant, the fact that he had no title to the premises would have constituted an equitable defense to any action that might have been brought against him for the recovery of the consideration to be paid. (*Parker* v. *Parmele,* 20 John, 130, 136 ; *Carpenter* v. *Bailey,* 17 Wend., 244, 247.) But, inasmuch as the defendant had received a deed and entered into possession under an encumbered title, he must, by force of the mortgage to Roe, which encumbered it, have suffered an eviction or its equivalent, in order to a defence to a suit on his bond. It was at one time held that to constitute an eviction, "there must be a disturbance of the premises by legal process." Such is not now the rule ; possession without a struggle to maintain it, may be surrendered to one having a paramount title, with the same right to resort to the grantor's covenants of warranty that would have been brought about by an eviction under process of law. (*Greenvault* v. *Davis,* 4 Hill, 643, 645–6 ; *Simers*

v. *Saltus*, 3 Denio, 214, 217.)    And in a more recent case decided in the Court of Appeals in 1857, but not reported otherwise than by a judicial reference to it in *Curtiss* v. *Bush* (39 Barb., 661, 664), it was held that, when a third party purchased at mortgage sale, to whom the grantee of the premises encumbered by the mortgage attorned, and then received a deed from the purchaser to whom he had attorned, without a change of possession in fact, there was a complete eviction.    In the present case Roe's mortgage, which encumbered Hawke's title, was foreclosed. Hawke as well as the defendant were made parties defendants.    A decree, which the defendant could not resist, was made, ordering a sale to satisfy the mortgage.    The whole decree is not set out in the case.    The presumption, however, is that it was a decree in usual form, containing an order that the purchaser be let into possession.    It was a decree to which the defendant was bound to submit or suffer for his contempt.    A sale under it terminated his title derived from Hawke, and from thenceforth it was in no way material to Hawke, who purchased at the sale.    By the extinguishment of his title all allegiance to him in respect to the premises conveyed was at an end, for the simple reason that his title had failed, and that the defendant, though he had remained in possession, was there in allegiance to the title of another, such being the necessary result of the sale.    No good reason can be assigned why the defendant should not be permitted to interpose the failure of the title warranted to him by Hawke as a defence against a recovery upon the bond, for which the premises conveyed was the only consideration. The fact that the defendant outbid all others at the mortgage sale ought not to prejudice him.    Neither the plaintiff nor Hawke, in whose stead the plaintiff is, were prejudiced by it. The fact that the defendant, as against all others, including the plaintiff, was the successful competitor at the sale increased the surplus, every cent of which went to the plaintiff to apply on the bond in suit.    His bid, besides being beneficial to the plaintiff, made it none the less in

equity an eviction. (*Hunt* v. *Amidon*, 4 Hill, 345, 347–8; *Simers* v. *Saltus*, 3 Denio, 214.) Nor were his equities impaired by the sale of his bid at an advance to a third party, who paid his bid to the sheriff and received from him a deed of the premises, and was, as a purchaser, let into possession·by the defendant. When the premises were struck off to the defendant there was an end of the plaintiff's right to interfere, to prevent a complete extinguishment of Hawke's title by the payment of the amount bid and the delivery of the deed. Until the plaintiff can show that some right of his was taken away or impaired by the sale of the bid, he cannot complain. Concede that the bond and mortgage of Rice were placed in the hands of the defendant, to be by him sold, and with the avails to pay the mortgage, there is no proof that any one purchased the bond in suit with the understanding that the defendant held that bond and mortgage for such purpose, or that the defendant had notice that any·person other than Hawke had an interest in it. It was, therefore, a matter between himself and Hawke alone, and as between them' he had a perfect right to return them to him and rely for his protection upon the covenants in his deed. (*Kelly* v. *Roberts*, 40 N. Y. R., 432.) If the defendant had sued Hawke for a breach of warranty of title, his measure of damages would have been the amount paid for the premises, with interest, from eviction. The case is without a finding or evidence to support one, that the value of the use of the premises exceeded the interest upon the $500 paid by the defendant to Hawke, when, or soon after Hawke conveyed to him the premises for which the bond was given, and the interest since paid upon the bond by the defendant. As the case stands the entire consideration for which the bond was given has failed, and as a necessary consequence, the plaintiff having received the whole surplus derived from the sale of the mortgaged premises, the defendant has lost not only all the plaintiff claims, but the additional sum of $500 and interest from the time it was paid. My conclusion, therefore, is, that the judgment of the General Term, reversing the judgment rendered

at the trial, should be reversed and that of the trial term affirmed.

All concur for reversal.

Order of the General Term reversed and judgment of the Special Term affirmed, with costs of appeal to the General Term and Court of Appeals.