Talbott v. Donaldson.

---

I. F. TALBOTT *et al.* v. ARMINTA E. DONALDSON.

No. 14,149.     (80 Pac. 981.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Review of Order Overruling a Demurrer.* The defendant in a civil action has a right to a review of an order overruling his demurrer to the plaintiff's reply on a transcript of the record, without bringing up the evidence produced at the trial, if the record do not show affirmatively that the error was cured.

2. —— *Record not Overcome by Presumptions.* This court will not presume, in such a case, that the district court admitted evidence outside of the issues made by the pleadings in order to avoid the effect of prejudicial error shown to have been committed in ruling on the sufficiency of the pleadings.

3. CONVEYANCES—*Suit for purchase-money, and Foreclosure— Counter-claim.* A purchaser of land conveyed to him by a deed containing full covenants of warranty who retains a portion of the purchase-money as security against a lien upon the land claimed by a third party in a pending suit against the vendor has the right to protect his interests by purchasing the land at a sheriff's sale made pursuant to a judgment in such suit enforcing the lien, which the vendor neglects to supersede; and in a subsequent suit by the vendor against the purchaser for the balance of the purchase-money the latter may counter-claim for the damages occasioned by the breach of the covenants in his deed notwithstanding the judgment enforcing the lien has, in the meantime, been reversed and the lien held to be unenforceable.

Error from Marion district court; CHARLES B. GRAVES, judge *pro tem.* Opinion filed May 6, 1905. Reversed.

*John D. Milliken,* and *G. C. Clemens,* for plaintiffs in error.

*Keller & Dean,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The petition in this case prayed judgment in favor of the plaintiff, Donaldson, against the defendant, Talbott, upon a promissory note for $1400, and for the foreclosure of a real-estate mortgage securing it. The note contained the following provision: "It is understood that this note is not to be paid until the suit of Jacobitz against Donaldson has been by the court settled." The petition alleged the performance of the condition expressed in the note.

The answer pleaded a counter-claim arising from a breach of warranty. It set forth a purchase of the land covered by the mortgage pending a suit by Jacobitz against Donaldson to enforce a lien upon it. The agreements of the parties were contained in the defendant's note and mortgage, the execution of which

was admitted, and a deed given by the plaintiff to the defendant. The deed covenanted that the grantor was seized of a fee-simple estate in the land; that the land was free from all other grants, titles, charges, estates, judgments, and encumbrances, except two mortgages, which the grantee assumed; and that the grantor would warrant and defend it against all persons lawfully claiming or to claim it. But, it was alleged, the suit of Jacobitz against Donaldson went to judgment in favor of Jacobitz, and, pursuant to that judgment, an order was issued for the sale of the land, which was thereafter duly advertised, offered for sale, and sold to the defendant. Subsequently the sale was confirmed, and a certificate of purchase issued. Concerning the situation of the defendant, under the circumstances, the answer contained the following statement: .

"That on said 6th day of May, 1902, said sheriff did offer said lands and tenements for sale at public auction, and it became necessary for the defendant I. F. Talbott, for the purpose of preventing the loss of said land and of all his interest therein, to purchase the same at said sheriff's sale, and he was compelled to, and did, pay at said sale, by reason thereof, and to prevent eviction, the sum of $1417.96, the same being the fair, reasonable and necessary sum required to pay off said judgment and encumbrance."

The reply, which was unverified, consisted of, first, a general denial, and, second, matter confessing and avoiding the answer. The rendition of the judgment in the Jacobitz case, the order of sale, the sale of the land and the confirmation of the sale were all expressly admitted as alleged in the answer. But it was alleged that efforts were made immediately following the rendition of the Jacobitz judgment to begin proceedings in error in this court to reverse it; that an approved supersedeas bond was filed before the sale; that purchasers at the sale were warned that proceedings in error would be prosecuted to reverse the judg-

ment, and that they purchased at their peril; that plaintiff objected to the confirmation of the sale, and asked a continuance of the hearing on the motion to confirm until the proceeding in error should be finally determined; that the defendant had notice of the motion to confirm the sale but did not object to a confirmation; that the district court, at the hearing of the motion to confirm, announced that he would continue it if the purchaser at the sheriff's sale objected to it; that the proceedings in error were successful and the Jacobitz judgment was reversed; that the Jacobitz suit was then dismissed, and judgment rendered against Jacobitz for costs; and that such judgment constituted the settlement of the suit of Jacobitz against Donaldson mentioned in the petition. The reply, however, showed that the supersedeas bond did not become effective until after the sale, on account of delay in filing a petition in error in this court, and it did not show that the defendant had any knowledge of the remarks of the court at the time the motion to confirm was heard.

To the second ground of reply a demurrer was filed, which the court overruled, and a journal entry of the proceedings was immediately made. A subsequent journal entry shows that upon a trial of the case evidence was introduced, and that the court found for the plaintiff and rendered judgment in his favor.

The defendant comes to this court on a transcript, and assigns as error the ruling of the court upon the demurrer to the reply. The plaintiff questions the defendant's right to review because the evidence given at the trial is not here. By an express provision of the statute the defendant is given the right to question the ruling upon the demurrer in this court. That ruling was not a part of the proceedings on the trial, and hence such proceedings are not essential to a determination of its correctness. All that is necessary is that prejudicial error be made to appear, and that the

record which presents the question do not show affirmatively that the error was cured.

Upon the petition, the answer, the general denial in the reply, and the admissions in the reply, the defendant was entitled to judgment. The only statement in the answer which the plaintiff claims was reached by the denial in the reply, and which, therefore, required proof, was that already quoted, to the effect that it was necessary for the defendant to purchase the land to save himself from eviction. This statement, however, was no more than a legal conclusion concerning the effect upon the defendant's rights of the rendition of the Jacobitz judgment, the issuing of the order of sale, and the offering of the land for sale. The district court was able to judge of the measure of compulsion attending those proceedings from the recital of them, and no statement of the pleader could add to, or detract from, the estimate which the law places upon them.

There was, then, in strictness, nothing left to be tried except the truthfulness of the new matter in the reply, and that was admitted by the demurrer. If, therefore, the ruling was erroneous it was not only prejudicial but it could not be cured by any evidence legally admissible under the pleadings, and it cannot be presumed that the court admitted evidence outside the issues. Error will not be presumed in order to avoid the effect of error shown.

The plaintiff undertook by his deed to protect the defendant in complete and unmolested dominion over the land conveyed. It was not the duty of the purchaser to interfere in the proceedings in the case of Jacobitz against Donaldson. That was Donaldson's affair, and the defendant could stand upon the covenants he had taken. The judgment establishing a prior lien in favor of Jacobitz, the order of sale, and the offering of the land for sale—all unstayed by the plaintiff—constituted a breach of the covenants of

the deed, and were such a menace that the defendant was authorized to take steps for his own protection. It cannot be presumed that the land could not have been sold if the defendant or Jacobitz had not bid, or that Jacobitz would have purchased if the defendant had not. Such an assumption would in effect deny the adequacy of judgment and execution as a remedy for the collection of debts. If the land had been sold to another than the defendant or Jacobitz the plaintiff's position would not have been improved. The purchase-money would have gone to Jacobitz. Unless the defendant should then redeem he would lose the land. If he redeemed, the redemption-money would go to the purchaser and not to the plaintiff. Whether Jacobitz or a stranger purchased, the defendant's title would be clouded and his right to a fee-simple title free of encumbrance and adverse claim would be invaded. Protests and warnings on the part of the plaintiff that the judgment was wrong could not avert the defendant's peril. Therefore, the conduct of the defendant was lawful and reasonable. The plaintiff was at fault in neglecting to take the steps necessary for the protection of the defendant, and for his own protection, and the reply was insufficient to meet the allegations of the answer.

Some of the rules of law governing the rights of the parties to this litigation were applied in the case of *Smith v. Dixon,* 27 Ohio St. 471, the substantial difference in the facts being that the covenantee in that case suffered a third person to buy the land, who then obtained possession. In the opinion it was said:

"The defendant was a party to the judgment, and is concluded by it. He permitted the land to be sold before he obtained a reversal of the judgment. He was the party proceeding in error, and might have stayed the sale by a supersedeas. The plaintiff was no more bound to prosecute proceedings in error, or to suspend the judgment, than he was to pay the amount due on the mortgage, to save the land from sale. He

had the covenant of the defendant to defend the title, and he might rely upon that. . . .     The plaintiff having been lawfully evicted by a title adjudged to be superior to that conveyed by the deed of defendant to him, in an action to which both were parties, and the defendant having suffered this to be done while the judgment was in full force, as against his covenants to the plaintiff, he is estopped to deny the validity of the judgment which he has permitted to result in a breach of his covenants and consequent cause of action against him.  The reversal of the judgment may, however, be available to the defendant, by way of restitution from the party recovering it, as provided in section 446 of the code.  But whether restitution would be of any permanent value may depend upon the final result of that case.  In no event could it answer the breach of the covenants, and may prove to be of no ultimate value to any one.  The certain remedy of the plaintiff on the covenants of the defendant's deed cannot be satisfied by a substitute of such uncertain availability."     (Page 477.)

There is no doubt, however, that the defendant had the privilege of purchasing at the sale made under the Jacobitz lien without affecting his right to sue on the covenants in his deed. (*Whitney v. Dinsmore,* 6 Cush. 124; *Cowdrey v. Coit,* 44 N. Y. 382, 4 Am. Rep. 690.  In the case of *Whitney v. Dinsmore, supra,* it was said:

"The premises were offered for sale at public auction, and if the plaintiff had not become a purchaser, he had a right to presume that he should be dispossessed by the purchaser, and he was justified in acting upon that presumption; and the defendant could not be thereby injured, for undoubtedly if the plaintiff had not become a purchaser, he would have been evicted, if he had refused to yield possession; and in such case the defendant would be responsible for the costs of suit, in the action against the plaintiff, as well as for the value of the land, if duly notified of the pendency of the action."     (Page 128.)

In the case of *Cowdrey v. Coit, supra,* the covenantee purchased at the sale, and then assigned his

bid to another, who received the deed and took possession. Lott, C. C., said:

"The fact that the defendant himself became the purchaser at the sale does not alter the case, or change his position, or in any way prejudice or affect his rights. It must be assumed that the judgment of foreclosure and sale was in the usual form, and that he and any of the parties to it were authorized and permitted to bid and become a purchaser at the sale. There was, therefore, no impropriety in the act itself. . . . If the defendant in the present action, instead of making an assignment of his bid to Hardy, had himself taken the deed of the property, the facts would, under that decision, have been deemed an eviction in equity, and have given the same right as he would have had if there had been an actual eviction by a claim under a deed to a stranger. It follows, that it was immaterial, in reference to the question of eviction, whether the defendant himself or Hardy took the sheriff's deed. In either case, the defendant was dispossessed under a title paramount to his own, and there was a failure of the consideration for which the bond in suit was given, except as to the amount of the surplus money which was received by the plaintiff, as already stated. This eviction gave the defendant a right of action, on the covenants in his deed against Hawke, for the whole of the purchase-money except the said surplus, and would have constituted a defense to a suit on the bond by him for the balance." (Pages 386, 388.)

In the same case Gray, C., said:

"A decree, which the defendant could not resist, was made, ordering a sale to satisfy the mortgage. The whole decree is not set out in the case. The presumption, however, is that it was a decree in usual form, containing an order that the purchaser be let into possession. It was a decree to which the defendant was bound to submit or suffer for his contempt. A sale under it terminated his title derived from Hawke, and from thenceforth it was in no way material to Hawke who purchased at the sale. By the extinguishment of his title all allegiance to him in respect to the premises conveyed was at an end, for the simple reason that his title had failed, and that

the defendant, though he had remained in possession, was there in allegiance to the title of another, such being the necessary result of the sale. No good reason can be assigned why the defendant should not be permitted to interpose the failure of the title warranted to him by Hawke as a defense against a recovery upon the bond, for which the premises conveyed was the only consideration. The fact that the defendant outbid all others at the mortgage sale ought not to prejudice him. Neither the plaintiff nor Hawke, in whose stead the plaintiff is, were prejudiced by it." (Page 393.)

The judgment of the district court is reversed, with direction to sustain the demurrer to the second ground of the reply.

All the Justices concurring.